**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **ADVANCE MAGAZINE** ) | |
| **PUBLISHERS INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. AW-07-650 |
| ) | |
| **DAVID LEACH** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

This case has been referred to the undersigned by the Honorable Alexander Williams, Jr. for post-judgment proceedings. *See* Document No. 5. Pending before the Court and ready for resolution is Defendant's Motion to Vacate Confession of Judgment (Document No. 4). Plaintiff filed an Opposition (Document No. 6). Defendant did not file a Reply by May 29, 2007. No hearing is deemed necessary and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2004).

**BACKGROUND**

On February 28, 2006, Advance Magazine Publishers Inc. ("Advance") filed a Complaint against David Leach alleging Mr. Leach "created a business out of illegally copying and selling for profit more than 500 original, creative works owned by Advance." Compl. ¶ 1 (*Advance Magazine Publishers, Inc. v. David Leach*, DKC-06-CV-522). The six count complaint alleged (1) copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 106, 501, *et seq.*, (2) copyright infringement under the Digital Millennium Copyright Act, 17 U.S.C. § 1202, (3)

trademark infringement under the Lanham Act, 15 U.S.C. § 1114, (4) trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), (5) trademark dilution under the Lanham Act, 15 U.S.C. § 11255 ( c) and (6) trademark infringement under Maryland common law.

On November 30, 2006, Judge Chasanow granted Advance's motion for partial summary judgment, enjoining Mr. Leach "from reproducing, displaying, or distributing any copies of Plaintiff's publications, in any form or format, pending a final determination of all issues." *Advance Magazine Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 638 (D. Md. 2006). Judge Chasanow further ordered Mr. Leach to provide to Advance's attorney "all of Plaintiff's publications, and infringing reproductions of those publications, that are in [Mr. Leach's] possession, custody, or control. These items will be held by Plaintiff's attorney until a final judgment is issued in this case." *Id.* at 639.

On January 4, 2007, John Ballando, on behalf of Advance, and Mr. Leach executed a *Settlement Agreement and Release of Claims* effective as of January 5, 2007. Mr. Leach agreed to pay Advance $100,000.00 as the Settlement Proceeds to satisfy his liability for damages under Count I of the Complaint. The minimum statutory liability for the 546 works Mr. Leach infringed is $409,500.00. Mr. Leach agreed to pay $100,000.00 in five installments. The first payment, $10,000.00, was due on or before February 28, 2007. The remaining $90,000.00 would be paid in four installments of $22,500.00. The parties agreed to dismiss the remaining claims of Advance's Complaint without prejudice.

The Agreement includes four paragraphs concerning "Default and Non-Exclusive Remedies." Paragraphs 12 and 13 state,

    12. In the event of a Default, the full balance of the Settlement Proceeds shall become immediately due and payable, and, in addition to any other rights to which Advance may be entitled, Advance shall have the right to recover all costs and attorneys' fees incurred in connection with collection of the Settlement Proceeds from Leach, and Advance shall have the right to enter and enforce a Confession of Judgment against Leach, as described in Paragraph 13 herein, in the full amount of Leach's Minimum Liability (reduced by the amount of settlement proceeds actually paid and received) which is set forth in Paragraph 2 of this Agreement; **provided, however,** that in the event of a Default arising from Leach's failure to make a timely payment pursuant to Paragraph 1 of this Agreement, Advance shall provide Leach with a single written notice of the Default, and Leach shall have ten calendar days from the date notice is given to cure the Default by paying to Advance all amounts then past due and owing under this Agreement. In the event such a Default is cured as set forth in this Paragraph, Advance shall not be entitled to the remedies described in Paragraphs 12 through 14 for such cured Default.

    13. Leach hereby constitutes and appoints David E. Mills, Esq. and W. Bradley Ney, Esq. of the law firm Dow Lohnes PLLC, 1200 New Hampshire Ave., N.W., Suite 800, Washington, D.C. 20036, as his duly constituted and authorized attorneys-in-fact for the purposes set forth herein, with authority, in the name, place and stead of David Leach, to confess judgment against him, upon the occurrence of a Default (unless cured as set forth in Paragraph 12), in the Office of the Clerk of the United States District Court for the District of Maryland, in the amount of $409,500.00 ("**Confession of Judgment**"), less any amounts paid pursuant to this Agreement by Leach, plus all attorneys' fees and costs incurred by Advance after the Effective Date to collect the Settlement Proceeds and in connection with the Confession of Judgment, as well as interest at an annual rate of seven percent from the date of Default. **Leach hereby acknowledges that he is making a voluntary, knowing, and intelligent waiver of his right to notice and a prejudgment hearing on the merits of any claim brought by Advance pursuant to this Paragraph 13.**

  On January 11, 2007, the parties filed a *Stipulation for Entry of Permanent Injunction on Count I of the Complaint and Dismissal of Remaining Claims*. *See* Document No. 43 (DKC-06-CV-522). On January 12, 2007, Judge Chasanow issued an order permanently enjoining Mr.

Leach from reproducing, displaying or distributing any copies of Advance's copyrighted works, on his websites, in any form or format. Except for Count I and the permanent injunction, Judge Chasanow dismissed without prejudice the remaining claims in the case. *See* Document No. 44 (DKC-06-CV-522).

On February 22, 2007, Mr. Leach addressed a letter to Jerry Birenz, Esquire of Sabin, Bermant & Gould LLP. A cashier's check for "$10,000.00" was enclosed. Mr. Leach explained,

> To avoid any confusion, note further that the legal symbol for money in Hong Kong is in fact "$", and given that in my discussions with Advance it became clear that I had little interest in residing domestically, it was a bit puzzling that at no point our settlement agreement did your lawyers include such terms as "dollar," "U.S.," "currency," "medium of exchange," "dollar," etc.

Pl.'s Opp'n, Ex. 3, at 1.

The cashier's check, issued by Standard Chartered Bank of Hong Kong, identifies the amount of currency as "Ten Thousand Hong Kong Dollars and 00/100." *See id.*, Ex. 3, at 2.

In accordance with the Settlement Agreement, $10,000.00 was due on or before February 28, 2007. On March 1, 2007, Advance's counsel sent Mr. Leach a Notice of Default. The notice states, in pertinent part,

> Advance is in receipt of your check for "HK$ 10,000.00". Your check has an approximate value of $1,280.00. The Settlement Agreement required a payment by February 28, 2007 of $10,000.00. Your payment is short by $8,720.00. Because you have not paid in full by February 28, 2007, you are now in default under the Settlement Agreement.
>
> Per the terms of the Settlement Agreement, you now have ten calendar days to cure this default by paying Advance the full amount past due and owing – specifically, $8,720.00. A failure to do so shall entitle Advance to all of the rights and remedies described in

       Paragraphs 12 through 14 of the Settlement Agreement.

*Id.*, Ex. 4.

On March 13, 2007, Advance filed the Complaint Seeking Judgment by Confession. *See* Document No. 1 (AW-07-CV-650). On April 12, 2007, the undersigned ordered that Judgment by Confession be entered against Mr. Leach in the amount of $408,220.00.[1] *See* Document No. 2 (AW-07-CV-650). In accordance with Local Rule 108.1.c[2], the clerk sent a Notice of Entry of Judgment by Confession to Mr. Leach. *See* Document No. 3 (AW-07-CV-650). On April 25, 2007, Mr. Leach moved to vacate the judgment by confession. Advance filed a response in opposition on May 14, 2007.

## **STANDARD OF REVIEW**

An application to vacate, open or modify the judgment by confession must be filed within 30 days after the service of notice. If no application is submitted within the time allowed, the judgment by confession shall be final. Local Rule 108.1.d.

> The motion [to vacate, open or modify the judgment] shall be considered and determined as promptly as possible by the Court. If the evidence presented establishes that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the Court shall order the judgment by confession vacated, opened, or modified, with leave to the defendant to file a pleading, and the case shall stand for trial. If the evidence does not establish that there are substantial and sufficient grounds for actual controversy as to the merits of the case, the judgment shall stand to the same extent as a final judgment.

---

[1] This amount is derived by subtracting HK$10,000.00 or $1,280.00 paid by Mr. Leach on February 22, 2007 from the minimum statutory liability for 546 works infringed or $409,500.00

[2] "Immediately upon the entry of a judgment . . . , the clerk shall issue a notice for the defendant notifying said party of the entry of the judgment and requiring defendant to appear in the cause wherein it is entered within thirty (30) days . . . and . . . show cause why the judgment should be vacated, opened or modified."

5

Local Rule 108.1.e.

## DISCUSSION

Mr. Leach asks the Court to vacate the Confessed Judgment due to a mistake. The mistake, according to Mr. Leach, was the failure to identify the currency or median of exchange in the Settlement Agreement. "The court will note that nowhere in the settlement agreement between myself and Advance was there any mention of 'currency,' 'U.S.,' 'median of exchange,' etc. Indeed, the agreement doesn't even include the word 'dollar.'" Document No. 4 ¶ 5. According to Mr. Leach, the dollar symbol ("$") is not exclusively used by the United States. Hong Kong also uses the dollar symbol ("$") in denoting its currency. "[T]he legal symbol for currency used in Hong Kong is, in fact, $. This is somewhat different from Taiwan (NT$), or Singapore (S$), but then, Hong Kong is a unique economy in the region, and one of more than a dozen to use $ as its legal symbol for currency (Chile is another)." *Id.* ¶ 6. Mr. Leach claims, by providing Advance "$10,000.00 Hong Kong dollars" in a timely manner, he has fulfilled the terms of the settlement agreement by providing $10,000.00 on or before February 28, 2007.

In its Opposition Advance contends Mr. Leach pre-mediated this ploy of making payment in Hong Kong dollars, despite full knowledge that Advance understood the settlement proceeds would be paid in United States dollars. "Leach, too, understood the agreement was in United States dollars but figured he could cleverly try to escape full responsibility under the settlement by relying on the fact that some other countries also use the dollar symbol for their currency." Document No. 6, at 1-2. Advance argues the Settlement Agreement is plain and unambiguous. The Agreement specified Mr. Leach must pay $10,000.00 on or before February 28, 2007.

6

> But the check that Leach sent was issued for "HK$10,000," which is spelled out as "Ten Thousand Hong Kong Dollars." Obviously, the symbol "$" and the term "Dollars have different meanings when the qualifiers "HK" and "Hong Kong" are added. Banks certainly think so. Had the check simply stated "$10,000" as required by the plain and literal terms of the Settlement Agreement, Advance could have cashed it for $10,000, i.e., 10,000 United States Dollars, and we wouldn't be here. Instead, Leach chose unilaterally to modify the amount he would pay under the Settlement Agreement from $10,000" to "HK$10,000." That is quite different from the amount specified in the Settlement Agreement, and that put him in default.

Document No. 6, at 5.

Advance also argues the context of the Settlement Agreement clearly demonstrates Mr. Leach was obligated to pay $10,000.00 in United States currency. This litigation involved mostly claims under federal law, with one claim under Maryland law. The parties are both United States citizens. The Settlement Agreement was executed in the United States, to be performed in the United States. "There were no Hong Kong parties or payments or claims whatsoever." *Id.* at 7. The parties settled a lawsuit to enforce Advance's rights under the United States copyright laws. Advance notes the Copyright Act uses the dollar symbol ("$") without explanation. The dollar symbol ("$") clearly refers to United States currency. Advance asks the Court to deny Mr. Leach's motion to vacate.

After a careful review of the motion to vacate, the Court finds Mr. Leach has not presented a meritorious defense to the judgment by confession. Contrary to Mr. Leach's assertion, there is no mistake or misunderstanding between the parties regarding the currency required to pay the Settlement Proceeds. Besides the United States, at least seventeen[3] other

---

[3] Antigua, Australia, Bahamas, Belize, Bermuda, Canada, Cayman Islands, Fiji, Hong Kong, Jamaica, Liberia, New Zealand, Singapore, Taiwan, Trinidad & Tobago, and Zimbabwe. *Foreign Currency Symbols (All)*, http://ublib.buffalo.edu/libraries/units/cts/codes/surrsymb.html (last visited June 5, 2007).

countries' currency is the "dollar" and use the dollar symbol ("$") as part of the symbol denoting their currency.[4]  Based on Mr. Leach's assertion that the contract failed to define the currency to be used and thus he elected to pay in Hong Kong dollars, Mr. Leach fails to provide any explanation for paying in Hong Kong dollars versus Belize dollars or Zimbabwe dollars.  No evidence has been presented that any of the claims in the original complaint were made against any Hong Kong citizen, or involved activities in Hong Kong.  Advance, a corporation formed in and with its principal place of business in the State of New York, sought to enforce violations of United States laws against a Maryland resident for activities originating in the United States.  The Court concurs with Advance's assertion that Mr. Leach intentionally planned to avoid paying the Settlement Proceeds in United States currency.  This is evident in both his February 22, 2007 letter where he enclosed the "HK$10,000.00" cashier's check as well as the motion to vacate.

Having failed to establish substantial and sufficient grounds for an actual controversy as to the merits of the case, the Court will deny Mr. Leach's motion to vacate.  The Judgment by Confession entered against Mr. Leach in the amount of $408,220.00 on April 12, 2007 shall stand to the same extent as a final judgment.

A separate Order will follow.

    /s/

__June 7, 2007_____      _____
    Date                                       WILLIAM CONNELLY
                                      UNITED STATES MAGISTRATE JUDGE

---

[4] For instance the Fiji dollar is "$F", the Liberia dollar is "L$" and the Trinidad & Tobago dollar is "TT$." *Id.*